UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TABATHA FOSTER,

                             Plaintiff,

             against,

NEAL EVAN PRICE and LARNELL PALMER,

                            Defendants.

**MEMORANDUM AND ORDER**
22-cv-02031 (LDH) (LB)

---

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Tabatha Foster ("Plaintiff"), proceeding pro se, brings the instant action against Neal Evan Price and Larnell Palmer ("Defendants") alleging violations of the Copyright Act, 17 U.S.C. § 101 *et seq*. On March 31, 2023, the Court granted Defendant Palmer's motion, brought pursuant to Federal Rule of Civil Procedure 12(b)(2), for dismissal of Plaintiff's claims for lack of personal jurisdiction. On February 22, 2024, the Court granted Defendant Price's motion, brought pursuant to Federal Rule of Civil Procedure 12(b)(2), for dismissal of Plaintiff's claims for lack of personal jurisdiction. Plaintiff moves pursuant to Federal Rule of Civil Procedure 60(b) for reconsideration of the Court's Orders.

### BACKGROUND[1]

Plaintiff is a resident of Brooklyn, New York, and alleges that Defendants Palmer and Price reside in Atlanta, Georgia. (Compl. ¶¶ 4–6, ECF No. 1.) According to the complaint, Plaintiff is the "Registered Copyright Holder" of various photographic images of herself, which

---

[1] The Court assumes the parties' general familiarity with this litigation and recites only the facts relevant to Plaintiff's reconsideration motion.

Defendants each uploaded to their respective YouTube and Patreon channels without permission. (*Id*. ¶¶ 7, 22.)  Defendant Price owns the YouTube channel "Ramil Reloaded" and the Patreon account "Ramil Amyr Patreon."  (*Id*. ¶ 16.)  Defendant Palmer owns the YouTube channel "Mr. Palmer."  (*Id*. ¶ 17.)

On March 19, 2022, Defendant Price uploaded a video to YouTube titled "Who Let Me Too In The Black Manosphere."  (*Id*. ¶ 21.)  Plaintiff alleges that Defendant Price's YouTube video made "derogatory sexual remarks" about Plaintiff, displayed several copyrighted images of her, including an explicit photograph of Plaintiff's buttocks, and received over 9,000 views.  (*Id*.)  On March 29, 2022, Plaintiff became aware that Defendant Price also posted a video to his Patreon account titled "WHO LET METOO IN THE BLACK MANOSPHERE."  (*Id*. ¶ 22.)  Defendant Price advertises membership access to his Patreon account for prices ranging from $5 to $20 per month.  (*Id*.)

On March 21, 2022, Defendant Palmer uploaded a video containing copyrighted photographs of Plaintiff as a thumbnail image.  (*Id*. ¶ 24.)  After Plaintiff complained to Defendant Palmer about the use of her photographs, Defendant Palmer modified the uploaded image by "placing an embarrassing meme on [Plaintiff's] face titled 'ME TOO' while leaving Plaintiff's breast exposed."  (*Id*. ¶¶ 24–25.)  Plaintiff alleges that Defendants Price and Palmer both financially benefitted from the use of her copyrighted materials.  (*See id*. ¶¶ 22, 24–25.)

The Court granted Defendant Palmer's motion to dismiss and Defendant Price's motion to dismiss on March 31, 2023 and February 22, 2024, respectively.  *See Foster v. Price*, No. 22-CV-2031, 2024 WL 730650 (E.D.N.Y. Feb. 22, 2024); *Foster v. Price*, No. 22-CV-2031, 2023 WL 2734728 (E.D.N.Y. Mar. 31, 2023).  With respect to each defendant, the Court dismissed

2

Plaintiff's claims for lack of personal jurisdiction, holding that Plaintiff failed to allege a "non-speculative and direct New York-based injury to [Plaintiff's] intellectual property rights." *Foster*, 2024 WL 730650, at *2 (citation omitted); *Foster*, 2023 WL 2734728 at *3 (citation omitted). Moreover, the Court held that "even if Plaintiff had successfully demonstrated the existence of a direct, New York-based injury, Plaintiff fail[ed] to allege that [either defendant], 'derives substantial revenue from interstate or international commerce.'" *Foster*, 2023 WL 2734728 at *3 (citation omitted); *Foster*, 2024 WL 730650 at *3 (citation omitted).

## STANDARD OF REVIEW

Rule 60 of the Federal Rules of Civil Procedure allows courts to relieve a party from a final judgment on the basis of several specified circumstances, including mistake, newly-discovered evidence, "fraud ..., misrepresentation, or misconduct by an opposing party," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b). "The standard for granting ... a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked ... matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted). A motion for reconsideration is not a vehicle for relitigating already-decided issues. *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) ("It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a

rehearing on the merits, or otherwise taking a 'second bite at the apple.'"); *see also Maldonado v. Local 803 I.B. of Tr. Health & Welfare Fund*, 490 F. App'x 405, 406 (2d Cir. 2013) ("A Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." (citation omitted)).

## DISCUSSION

Pursuant to C.P.L.R. § 302(a)(3)(ii), personal jurisdiction may be extended to a non-domiciliary in cases where: "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Penguin Group (USA) Inc. v. American Buddha*, 16 N.Y.3d 295, 301 (2011). In dismissing Plaintiff's claims for lack or personal jurisdiction, the Court held that Plaintiff failed to allege a "non-speculative and direct New York-based injury to [Plaintiff's] intellectual property rights." *Foster*, 2024 WL 730650 at *2 (citation omitted); *Foster*, 2023 WL 2734728, at *3 (citation omitted).

In *Penguin Group (USA) Inc. v. American Buddha*, the New York Court of Appeals narrowly held that, in copyright infringement cases involving the uploading of a copyrighted printed literary work, the situs of injury is the location of the copyright holder. 16 N.Y.3d at 301-02. Here, however, the Court held that *Penguin Group* was inapplicable because, unlike in *Penguin Group*, "Plaintiff ha[d] not alleged, for example, that [Defendants] made Plaintiff's copyrighted image available for download by [their] YouTube viewers, nor [did] she claim that she suffered any actual or threatened business losses by way of the alleged infringement."

4

*Foster*, 2024 WL 730650 at *2; *Foster*, 2023 WL 2734728 at *3.  Thus, Plaintiff's location in New York was not sufficient to establish a New York-based injury.  *Foster*, 2024 WL 730650 at *2 (citing *Adwar Casting Co., Ltd. v. Star Gems Inc.*, 342 F. Supp. 3d 297, 304–05 (E.D.N.Y. 2018) (holding that the *Penguin Group* analysis did not apply to copyrighted images uploaded to the defendant's Facebook page, notwithstanding that the copyright holder was situated in New York, because "[the] case [did] not involve a literary work posted on the internet and freely downloadable by anyone with a computer."); *Foster*, 2023 WL 2734728 at *3 (same).

      Plaintiff urges the Court to reconsider its conclusion that she failed to allege a "non-speculative and direct New York based injury" to her intellectual property rights.  (*See* Pl.'s Mot. for Recons. ("Pl.'s Mot.") at 4–6, ECF No. 29.)  Plaintiff does not direct the Court to any intervening change of controlling law.  Instead, Plaintiff directs the Court to allegations she raised in her opposition to Defendant Price's motion to dismiss, which she argues the Court overlooked in making its decision.  (*See id.*; Pl.'s Mem. in Opp'n to Def. Price's Mot. to Dismiss, ECF No. 21.)  Specifically, Plaintiff directs the Court to allegations that "both Defendant Price and Defendant Palmer made her images available for download to their YouTube viewers," "that Defendant Price also made her images available on his online Patreon account available for download to his paid subscribers," and that "she suffered damage[s] to her music career," lost business opportunities "as a content creator," and lost "potential sales [of] her music."  (Pl.'s Mot. at 4–6.)

      Even taking these allegations as true, they do not change the Court's conclusion.  Plaintiff still fails to bring her claim within the purview of *Penguin Group* because she does not allege that "the 'primary aim' of the [Defendants] was to upload the copyrighted material so that others

5

could download pirated copies," nor does she sufficiently allege that she was "deprived of revenue or potential customers when the [photo] w[as] viewed on the Internet by third parties." *See Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 16-CV-442, 2017 WL 449913, at *5–6 (S.D.N.Y. Jan. 18, 2017) (citation omitted). Moreover, Plaintiff's allegations that she lost business opportunities as a content creator and that she lost potential music sales are insufficient to establish a New York-based injury. *See Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) ("[The Second Circuit has] rejected as insufficient to support the exercise of jurisdiction . . . allegations of remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here." (citations and internal quotation marks omitted)). Thus, Plaintiff fails to allege a New York-based injury and, as such, Plaintiff's claim must still be dismissed for lack of personal jurisdiction.

Moreover, the Court held that "even if Plaintiff had successfully demonstrated the existence of a direct, New York-based injury, Plaintiff fails to allege that [either defendant], 'derives substantial revenue from interstate or international commerce.'" *Foster*, 2023 WL 2734728 at *3 (citing *Penguin Group*, 16 N.Y.3d at 302); *Foster*, 2024 WL 730650 at *3 (same). In urging the Court to reconsider this finding, Plaintiff argues that she "does not believe it matters if Defendants earn substantial income because Plaintiff['s] nude image was shared without her consent and [that] is a criminal offense." (Pl.'s Mot. at 6.) Plaintiff also directs the Court to a February 23, 2024 email from Defendant Price, threatening litigation against her, in which he states that his YouTube channel "was generating $2,500-$5,000 a month" and is now

6

defunct due to Plaintiff's copyright claim. (Pl.'s Mot. at 7, 11–13.) Neither of these allegations alter the Court's conclusion.

*First*, the fact that sharing Plaintiff's photo is a criminal offense has no bearing on whether Defendants earned substantial revenue from interstate or international commerce. *Second*, the fact that Defendant Price may have been generating $2,500 to $5,000 a month on his YouTube channel, without more, is also not sufficient to allege that Defendants derived substantial revenue from interstate or international commerce. Of course, there is no specific dollar threshold at which revenue from interstate or international commerce becomes "substantial." *See Jewell v. Music Lifeboat*, 254 F. Supp. 3d 410, 421 (E.D.N.Y. 2017) (citing *Light v. Taylor*, No. 05-CV-5003, 2007 WL 274798, at *4 (S.D.N.Y. Jan. 29, 2007), *aff'd,* 317 F. App'x 82 (2d Cir. 2009)). However, to determine whether a defendant derives substantial revenue from interstate commerce, the Court may look to either (1) the percentage of Defendants' overall revenue derived from interstate commerce, or (2) the absolute amount of revenue generated by Defendants' activities in interstate commerce. *See id.* (citing *Light*, 2007 WL 274798 at *4). Regardless of the approach, the Court's main concern is the "overall nature of [Defendants'] business and the extent to which [they] can fairly be expected to defend lawsuits in foreign forums." *Light*, 2007 WL 274798 at *4. The New York Court of Appeals has described this element as a "'bigness requirement' designed to assure that the defendant is 'economically big enough' to defend suit in New York." *See Ingraham v. Carroll*, 90 N.Y.2d 592, 599 (1997) (citation omitted). Here, Plaintiff's allegation that Defendant Price may have been making $2,500 to $5,000 a month from his YouTube channel does not, in itself, raise a

7

plausible inference that Defendants can be fairly expected to, or are economically big enough, to defend lawsuits in New York.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is DENIED. The Clerk of Court is respectfully directed to mail a copy of this Order to pro se Plaintiffs.

SO ORDERED.

Dated: Brooklyn, New York  
      March 31, 2025

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge